May it please the court, my name is Dominic Gentile, I represent Frederick Rizzolo, who is only called Frederick Rizzolo on this pleading. Everybody in the world knows him as Rick. And I want to commence by thanking you for cheating me out of a trip to San Francisco and making me perform at a school at which I teach. That having been said, when the district court imposed a revocation of Rick Rizzolo's supervised release and further extended by two years that supervised release and ordered him to spend nine months in custody, he commenced that sentencing by saying these words, which of the appendix, and I quote, the court is in every case and whether a grade C violation still calls for the court to go back and consider the 3553 factors that pertain with regard to any potential sentence, consideration of penalty, to try to fashion a disposition that's sufficient but not greater than necessary to reflect the seriousness of the violations, to provide just punishment, and to promote respect for the law. Those factors are contained in 18 U.S. Code 3553 A2A. And while you can and a district court must consider those factors when imposing an initial sentence because they are the retribution factors, the court is not permitted to take them into consideration at the time of the revocation of a supervised release and any kind of an incarceration that would follow. We know that because United States v. Tapia, which I cited in the 28-J letter last week, said precisely that. It is not to be taken into consideration in the imposition of a supervised release. And our circuit in December of last year in United States v. Grant extended that and said that it's not to be taken into consideration at the imposition and it's not to be taken into consideration at the revocation. So does that mean that it is, that it is not, did our court say that it's not error if a court failed to take in the 3553 at revocation or did we say that it is error if a court does take into account those factors? It is error. Well, there's a difference there. We may have said that it is not error if a court fails to do so, but that's different from saying that if a court considers these factors, that it is affirmative error for the court to do so. Is that what we said? I read Grant as if not saying that, certainly implying that, because it follows Tapia. Why would it be error for a court to take into account various factors that were relevant in the initial sentencing? Why would it be error to do so? Because... And why a court might choose not to do so? Well, first of all, because Congress said that they weren't supposed to do so and Congress controlled. Secondly, with respect to the revocation... I'm sorry, but Congress said so in where? In 3583E. 3583? 3583E. 3583E, Congress expressly eliminated section 2, excuse me, section A2A from the consideration at revocation hearings. And so given that, it has to be, by the very nature of the fact that it exceeded the directive of Congress, it has to be error. But more importantly here, the only person, the only argument that was before the court... Counsel, I'm looking at 3583E, and I see that the things that a court shall consider... I don't see anything that says that a court may not consider and it would be error for it to do so. I think that that's what TAPIA stands for, Your Honor. Judge Bybee, if you read... In fact, I have it here. In TAPIA, the court said at page 23... 87 and 88, when referencing 3553A2, the court said, these provisions make clear that a particular on the kind of sentence under consideration. For example, a court may not take account of retribution, the first purpose listed in 3553A2, when imposing a term of supervised release. It was Grant that extended that also to the revocation. So I don't think it can be any clearer. The United States Supreme Court has spoken to it. Counselor, isn't it so... Well, it doesn't seem to me that your client challenges the court's finding that he committed the acts. Is that correct? We did not challenge the finding that he committed the acts. So he committed the acts which were in violation of the terms and conditions of his probation. We did not challenge the acts. Okay. And it doesn't seem that you claim that the facts were insufficient to support the decision that was made. Because the decision, of course, it needs only a preponderance of the evidence. We didn't challenge that either. So at that point, isn't that the end of the story? No, it's not. Because the court, at that point in time, while it might have been able to revoke, it And that's where the impact comes in. Because retribution, while it is a proper consideration at the imposition of an initial sentence, it's already been considered. That's what's implied, at least, in what Congress did with 3583E. You shouldn't revisit it. And so when the court... So at this point, all you're challenging is what the court did, given consideration that it had everything under the preponderance of the evidence standard to find the violation. We are challenging the fact that the court heard at all from... Not even somebody who was... Well, you didn't answer my question. We are challenging what the court did, yes. All right. We are challenging the imposition. So isn't it true also, then, if I look at U.S. v. Jones, that a court may consider without limitation any information concerning the background, character, and conduct of the defendant? That's at an initial sentencing. That is precisely... Well, what statute or case law limits what the district court can listen to at any stage? Well, I think that 3583E makes it clear that they're not to listen to things that relate to retribution. And that's all Hunterton talked about. We listen to all sorts of things that don't enter into a decision. The most that the statute speaks to is what the judge may base his decision upon. I don't see anything that limits what the judge can listen to or decide. I wind up hearing arguments in lots of cases where it's not going to have any effect on the decision whatsoever. That doesn't mean I don't listen to it. That's not what happened here. If you look at the appendix again at pages 300 and 301... Well, can you... And that gets me, asks me the other question. What is it that causes you to say the district court rested its opinion on or its decision here on retribution? I don't see it. Two things. Number one, at pages 300 and 301 of the appendix, the court said that not only was the Henry's lawyer heard by filing in written form, but he went on to say at page 301 of the appendix, I have read it and will consider it and I will allow Mr. Hunterton to briefly address the matter, to state the Henry's position in a few minutes, but I don't want to repeat everything that's already contained. I mean, a lot has been said. I don't need to hear a lot more. And that was at the very threshold. The very first person that he let address the court clearly was not a victim. The court found that the Criminal Victims' Rights Act did not apply here. The Henry's weren't victims. It wasn't even the Henry's. It was an advocate for the Henry's. So where in what the district court said about what it did, does it seem to you to suggest that he relied on what counsel said? Well, I think that you have to take a look at what counsel said. Well, I look at what the district court said. So again, where in what the district court said do you take a good quote that they were relying on what counsel said? I find that in the fact that he used the retribution factors. Where did he use the retribution factors? He said that he did, Judge Smith. I look at the pages that identify to us, and I haven't found it. At 374 and 375. I've got it in front of me. Okay. I do too. He said that calls for the court to go back and consider the 3553 factors that pertain with regard to any potential sentence, consideration of penalty, to try to fashion a disposition that's sufficient but not greater than necessary to reflect the seriousness of the violations to provide just punishment and to promote respect for the law. That is precise. He said that he was doing that. I can't do better than that. He said it. We're supposed to line those out and not consider those things? That makes no sense to me. What is it you're supposed to look at in imposing sentence of any kind, including revocation of supervised release? There is a distinction between imposition of the initial sentence upon conviction, and according to 3583E and TAPIA. Well, seriousness of the violations. Looking at the violations of supervised release, not the original offense, are you telling me the district judge is not supposed to give consideration to that? I can only tell you that TAPIA says that it doesn't come into consideration. Retribution doesn't, but everything else doesn't either? No, no. It only says retribution. And those three factors are identified by TAPIA as relating only to retribution. Counsel, even if we accepted your argument about the impropriety of considering all of the factors in 3553, 3583E tells the court to go back and consider certain factors in 3553. Right. And you're objecting that he considered a factor that's not on that list. That is correct. I understand your argument. But I don't see anything in Judge Crow's statement on page 374 that suggests that he considered anything other than the factors to which 3583 referred him. He has said there that he specifically cited 3583, which also then takes us back. He put the period there. The next paragraph says the court has to call for the court to go back and consider the 3553 factors. But in the previous paragraph, he referred to 3583. So why should we give Judge Crow the benefit of the doubt here that when he's referring to both 3583 and 3553, he's referring to those sections in 3553 that are incorporated by 3583? Because he didn't say that. He expressly stated that he was looking at the factors that reflect the seriousness of the violation to provide just punishment and promote respect for the law, which are the retribution factors, which are prohibited by 3583E. I can't read his mind. He said it. Maybe he shouldn't have said it. Maybe he wishes he didn't say it. Maybe you want to give him the benefit of the doubt, but he said it. Well, my worry is am I supposed to give him the benefit of the doubt? What is my standard to review on this particular matter? In this instance, it's de novo. It's an abuse of discretion. Why is it de novo? If it's an abuse of discretion generally, then you're just saying that if I find a violation of the law, he has abused his discretion? Is that what your argument is? Because it's an abuse of discretion generally. So I'm trying to figure out where you're going on how I can ever get this de novo. Well, I can only say that in both Pepe and Grant that it appears that it was de novo review. Well, it's certainly that if there is a violation of the law in doing what you do, then he's abused his discretion in doing it. I guess, again, I'm trying to quibble or maybe trying to understand what you're asking me to do. I'm asking you to take a look de novo with respect to this matter. And what case is the best case you have for this is de novo review? Your best case. I would have to rely on Tapia because Tapia was a plain air case. I didn't see it in Tapia, but I guess I'll look again. Thank you. May it please the court. Peter Levitt for the United States. Your Honor, the only assignment of error in the opening brief was that once Judge Pro found the Henrys to be non-victims under the CVRA, there remained, quote, no authority, Grislow argued, for the district court to permit their lawyer to speak. And that, of course, ignores 3661, which provides virtually unlimited discretion to consider any information at sentencing. 3661 provides that there shall be no information, no limitation on the information concerning the background, the purpose of imposing an appropriate sentence. And that's precisely what the district court did here. The district court determined that the Henrys were not CVRA victims because they had not been directly or approximately harmed as a result of Grislow's federal conviction. But because Grislow's plea agreement specifically referenced payments to the Henrys, it, as the district court said, rolled into the Henry civil suit and gave them a sort of hybrid status. Were there payments from the defendant individually as part of that plea agreement? Your Honor, it remains to be seen whether the Henrys can access Grislow's personal assets. But that will be resolved in the civil case at an appropriate time. So why does it need to be part of the criminal case? Well, it needs to be part of the criminal case for two reasons. First of all, because the criminal plea agreement incorporated the concept of civil payments, how much in an individual capacity are for now unknown. And second of all, because it's clear from the findings of the probation office, the district court, and the magistrate judge that the Henrys are not just people who walked in off the street. They're speaking to the statutory factors of background, character, and conduct. And the probation office found, in excerpts of Record 273, that even if the Crazy Horse II didn't get sold for years, Grislow is still, quote, obligated to make the victim as whole as possible. The magistrate judge, dealing with the dispositive motion in 2010, said that Grislow's responses regarding his interests in various trusts were clearly deceptive. The jury may conclude that false or deceptive answers demonstrate an ongoing attempt to conceal his assets or the disposition of those assets. Oh, the jury may find. I take it that's a reference to the subsequent civil litigation that's ongoing. But that still doesn't tell me why, in this particular proceeding, a sentencing for revocation of a supervised release and the sentence imposed by Judge Proe for that, not for what happened before, for which the obligation to the Henrys arose, but for what happened in terms of the offenses cited by the probation office and the suspension. What do the Henrys have to say to that? The Henrys have to say that their attempts to access Grislow's individual assets are the same assets that Grislow is pushing from one corporation to another corporation and squirreling away to the Cook Islands. That's the Henrys' interest in it. And they spoke, through their attorney, in rather— Colorful language. Colorful language is a good adjective, Your Honor. But they spoke to the statutory sentencing factors of Grislow's background, character, and conduct. Did those comments influence Judge Proe? There's no evidence that it did. The district court did not, after four days of evidentiary hearings, Mr. Hunterton spoke on behalf of his clients for a couple of minutes, spanning four pages of transcript. Then, after that, the attorneys went on, in support of their respective positions, for about 45 more pages. Then, the district court parsed the four days of evidentiary hearings, focusing on the record-based evidence, and decided not to give Grislow an above-guideline sentence up to the statutory maximum of 24 months, but rather to give him a within-guidelines but high-end sentence of nine months' imprisonment, followed by a 24-month supervised release. It's abundantly clear, from a fair reading of the record, that the primary concern of Judge Proe in fashioning this reasonable sentence was to ensure that Grislow, next time out, was disclosing all of his financial transactions, not concealing them to his probation officer. This was the judge's primary concern, that Grislow's secrecy and deceptiveness were hamstringing the effectiveness of the supervised release process. However, counsel, you would agree with me, wouldn't you, that it was the power company, and not Grislow, who was technically obligated to pay the restitution? Your Honor, yes, it's… Wouldn't you agree with that? It says in the plea agreement, yes. Okay, so then what's the significance of the fact that the district court seemed to correlate Powerhouse's financial obligations with Grislow? I mean, isn't that of some significance? It is of some significance, Your Honor. And therefore, counsel's suggesting we ought to undo what was done. I would disagree with that attempt at a remedy, Your Honor, and say that while no error affected Grislow's sentence in any discernible way, if the court… Did Grislow have any obligation for this payment? That certainly remains to be seen, Your Honor, and the district… The district court, the magistrate, and the probation office all seem to think so, Your Honor, that the Henrys… Do you have any way to back up their think-so? I do not at this point know what the precise individual liability is with the now defunct power company unable or putatively unable to pay the Henrys their money. I do, however, know that the district court and the magistrate judge and the probation office have written that Grislow, Grislow himself, has some obligation to make the victims whole. And based on that, the district court let counsel for the Henrys allocute briefly at the sentencing hearing. Is there anything in the plea agreement which would lead them to that idea? Your Honor quoted the language that does say Grislow makes the first million dollar payment and the power company made the next nine million dollar payment. There's, however, language in the plea agreement that suggests a contingency if the crazy horse two doesn't get sold. But again, it's not completely clear-cut what the extent of Grislow's individual obligation is, but it's not necessary to resolve the solitary issue on appeal, which is whether the district court abused its broad discretion in letting the Henrys' attorney speak for several minutes. If I'm interested in the statutory question, what are we to make of the fact that 3583 tells the district court which of the factors in 3553 that it should consider and that it has omitted the one that the district court specifically mentioned? I would respond, Your Honor, by saying that this court in September of last year wrote in Grant, nevertheless, TAPIA is the controlling statutory construction. So prison, whether as an initial sentence or on revocation of supervised release, can be imposed and the duration selected only for purposes of retribution, deterrence, and incapacitation, not rehabilitation. Rehabilitation didn't factor one whit into the district court sentence of Grislow on July of 2011. So under the controlling statutory construction, as Grant construes TAPIA, there's no error. Well, the specific provision I think that was of concern to Mr. Grislow's counsel was 3553A2A, the seriousness of the offense, the idea of promoting respect for law and providing just punishment for the offense. Your Honor, it sounds like it was not briefed in the opening papers. It sounds like this is some sort of a U.S. versus McBell argument, which talks about what can and cannot be spoken of at supervised release. But the cases that construe McBell, and I'm doing this off the top of my head because it wasn't briefed, I think it's the United States versus Simtob, which says the unlawful factors have to really play a major role in the district court's disposition. And here it certainly did not. For all of those reasons, Your Honor, we would ask the court to affirm the judgment in sentence. Thank you. One minute. No more than one minute. Okay. Three things. Number one. Wait till you get to the podium because we can't hear you otherwise. Okay. Does my minute start now? Okay. The De Novo review. In our brief, our reply brief, we cite Kimsey. And I think that in Kimsey, Kimsey did give the De Novo review because an objection was made at the district court level. We, of course, also did so. We moved to strike the pleading. So I think we are entitled to the De Novo review of an abuse of discretion. Number two, Grant, bad language. I mean, unfortunately, what happened to that? Why didn't you cite Grant in your brief? I didn't have it. I just found that as we were preparing for it. But the decision was there when you wrote both your opening brief and your reply brief. No, it wasn't. I don't think it was there for the opening brief. It was there for the reply brief. It was definitely there for the reply brief. But, frankly, I found, frankly, I mooted this case at this school a few weeks ago, and that's how I got Tapia and Grant. Okay? That's the truth. Tapia wasn't cited in either of your briefs either. No, I understand. That's why it's in the 28-J letter. But in any case, Tapia lumped together both original sentencing and revocation. Your minute's up. What's your third point? Okay, the third point, that's it. That's all. Thank you. Thank you. Thank both counsel for the helpful argument. The case just argued is submitted. We'll move to the next case on the argument calendar, Franchese v. Harris Entertainment.
judges: Clifton, Bybee, Smith